UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES R. RICE, JR.,                          Case No. 16-11330

        Plaintiff,                     Avern Cohn
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Stephanie Dawkins Davis
                                             United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 16)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On April 12, 2016, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Avern Cohn

referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for supplemental security

income. (Dkt. 4). This matter is before the Court on cross-motions for summary

judgment. (Dkt. 15, 16). Plaintiff also filed a reply in support of his motion.

(Dkt. 17).

    B.    <u>Administrative Proceedings</u>

Plaintiff filed a claim for supplemental security income on April 5, 2011. (Tr. 19). Plaintiff alleged disability beginning March 1, 2011. The claim was initially disapproved by the state agency responsible for making disability determinations on behalf of the Commissioner on July 7, 2011. On February 1, 2012, Administrative Law Judge Jacqueline Y. Hall-Keith issued an unfavorable decision, finding that plaintiff could perform a significant number of jobs in the economy. (Tr. 19; Tr. 65-74). The Appeals Council denied review. (Tr. 19).

On June 25, 2013, plaintiff filed another application for supplemental security income, which was denied on October 8, 2013. (Tr. 19). Plaintiff requested a hearing and on November 12, 2014, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Timothy C. Scallen, who considered the case de novo. (Tr. 32-54). In a decision dated December 23, 2014, the ALJ found that plaintiff was not disabled. (Tr. 16-28). Plaintiff requested a review of that decision, and the ALJ's decision became the final decision of the Commissioner when, the Appeals Council on April 1, 2016, denied plaintiff's request for review. (Tr. 1-5).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.  FACTUAL BACKGROUND

### A.  ALJ Findings

Plaintiff was born in 1973, making him 39 years old on the application date. (Tr. 27).  Plaintiff has a high school education, and has previously worked as a warehouse worker and cleaner.  Both of these jobs are classified as medium to heavy and unskilled.  *Id.*

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity since the application date.  (Tr. 21).  At step two, the ALJ found that plaintiff has the following severe impairments: obesity, obstructive sleep apnea, and a history of narcolepsy.  *Id.*  The ALJ then concluded that claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 23).  As such, the ALJ made the following finding as to plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) but is precluded from working around dangerous machinery or at unprotected heights. The claimant is unable to operate a vehicle or drive as a work duty.

*Id.*  The ALJ next determined that plaintiff could not perform his past relevant work.  (Tr. 27).  At Step 5, the ALJ reasoned that plaintiff could perform a

significant number of jobs available in the national economy, considering his age, education, work experience, and RFC. *Id*. As such, the ALJ concluded that plaintiff has not been under a disability from the application date through the date of his decision. (Tr. 28).

B.    Plaintiff's Motion for Summary Judgment

Plaintiff, acting without counsel, filed a one-page, handwritten motion for summary judgment, indicating that he is suffering from a sleep condition and back pain. He says he cannot sit, stand, or walk for more than two hours. (Dkt. 15).

C.    The Commissioner's Motion for Summary Judgment

The Commissioner first points out that the lack of a brief leaves the Court, and the Commissioner, without guidance as to what errors he believes the ALJ made. The Commissioner acknowledges that some judges in this district have found that a "plaintiff in a Social Security disability benefits case . . . has no burden to do anything in order to obtain judicial review of the administrative decision except file a timely complaint." *Wright v. Comm'r of Soc. Sec*., 2010 WL 5420990, at *1 (E.D. Mich. Dec. 27, 2010). Others suggest that dismissal is the appropriate remedy when a *pro se* plaintiff does not effectively prosecute his or her case. *Salamo v. Comm'r of Soc. Sec*., 2012 WL 6929176, at *2-3 (E.D. Mich. Nov. 27, 2012) (collecting cases), report and recommendation adopted, 2013 WL 273205 (E.D. Mich. Jan. 24, 2013). In addition, the Sixth Circuit has not opined

on the degree of review, if any, due to non-briefed benefits claims.  Despite this

confusion, the Commissioner points to a recent decision from Magistrate Judge

Patricia T. Morris, who opined that cases like this should only be reviewed for

"obvious errors" in the Commissioner's decision.  *Caldwell v. Comm'r of Soc.

Sec.*, 2016 WL 4150031 (E.D. Mich. June 30, 2016), report and recommendation

adopted, 2016 WL 4089210 (E.D. Mich. Aug. 2, 2016) (Michelson, J.).  In so

doing, Judge Morris correctly cautioned against the harms that would stem from

the Court providing exhaustive review to non-briefed claims.  She noted, for

example,

> Providing exhaustive review to non-briefed claims
> would also create a perverse incentive for Social Security
> claimants to abstain from arguing in support of their
> claim. It would prove difficult for disability advocates to
> compete with a free, court-as-advocate service, given
> that a judge knows best what sort of arguments he or she
> finds most persuasive. Should the knowledge of this
> practice become widespread, Social Security benefits
> appeals would become increasingly taxing on the courts.

*Id*. at *4.

Thus, in keeping with *Caldwall*, the Commissioner maintains that the ALJ's

decision is supported by substantial evidence, and does not contain any obvious

errors that are not otherwise harmless.  At step two, the ALJ found that plaintiff

had the following severe impairments: obesity, obstructive sleep apnea, and a

history of narcolepsy.  (Tr. 21).  According to the Commissioner, the medical

evidence is quite limited, and it does not establish the existence of any medical impairments beyond those the ALJ assessed as severe. Indeed, plaintiff's main problems have always been sleep apnea and obesity (Tr. 321, 323, 335, 339, 342, 347, 352, 356). He also has a history of narcolepsy (Tr. 337), which appears to stem from his sleep apnea. (Tr. 357). As the ALJ found these all to be severe, and the record does not support the existence of any other medical impairments, there are no obvious errors at step two. The Commissioner points out that the ALJ recognized that plaintiff testified to problems with acid reflux disease, but appropriately found that this was not a severe impairment given the lack of any documentation of this impairment in the record, and the lack of any evidence establishing that this impairment significantly interfered with the Plaintiff's ability to work. (Tr. 23). And, while plaintiff also complained of back pain, the ALJ correctly noted that he never treated for this alleged impairment, and an October 28, 2014 medical assessment noted that plaintiff did not have pain. (Tr. 24, citing Tr. 372-73).

The Commissioner also acknowledges that courts applying the "obvious error" standard have frequently remanded for further proceedings where the ALJ failed to render a proper finding at Step Three. *See e.g.*, *Crist v. Comm'r of Soc. Sec.*, 2014 WL 2931412, at *2 (E.D. Mich. June 27, 2014); *Ostrander v. Comm'r of Soc. Sec.*, 2016 WL 2754906, at *3 (E.D. Mich. Apr. 5, 2016). At step three,

the ALJ must determine whether the claimant meets or equals an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart B, Appendix 1. The ALJ may determine whether the claimant meets a listing without seeking input from a medical expert, but must seek an expert opinion when determining whether a claimant's conditions medically equal a listed impairment. *See Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Krawczak v. Comm'r of Soc. Sec.*, 2016 WL 1178753, at *4 (E.D. Mich. Feb. 26, 2016) ("SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter."), report and recommendation adopted, 2016 WL 1170778 (E.D. Mich. Mar. 25, 2016).

With respect to whether plaintiff's impairments meet any listing, listing 3.10 governs "sleep-related breathing disorders." To meet this listing a plaintiff must satisfy all the requirements articulated in listing 3.09 or 12.02. The listing is not met because the evidence does not indicate any cor pulmonale under section 3.09, and there is no evidence of any organic mental disorder under section 12.02. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 3.09, 3.10, and 12.02. In addition, plaintiff's representative noted that the evidence did not suggest that any listing

was met.  (Tr. 309).

With respect to whether plaintiff's impairments equal any listing, the Commissioner acknowledges a lack of clarity as to whether the SDM model, which allows state agencies to decide cases involving physical impairments without a medical consultant, affects an ALJ's obligation to consider a medical opinion on equivalence under SSR 96-6p.  In this case, the disability determination transmittal does not bear a doctor's signature (Tr. 81-88, 89), and nowhere else does the record contain a medical opinion on the issue of equivalence.  Thus, this could be viewed as an obvious error.  However, the Commissioner asserts that the error is harmless and remand is not warranted. Even if the Commissioner's policy required the ALJ to consider a medical opinion on equivalence, it did not relieve plaintiff of his own burden to present evidence of equivalence.  *See Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004) (to show equivalence, the plaintiff must "present medical evidence that describes how his impairment is equivalent to a listed impairment"); *Bondy v. Comm'r of Soc. Sec.*, 2015 WL 1530435, at *20 (E.D. Mich. Mar. 31, 2015); *Buchanon v. Comm'r of Soc. Sec*., 2015 WL 927831, at *6-7 (E.D. Mich. Mar. 4, 2015).  Moreover, the regulations specify that, at the hearing level, the ALJ is ultimately responsible for deciding medical equivalence.  20 C.F.R. § 416.926(e). Thus, unless plaintiff can identify some basis for questioning the ALJ's finding,

the Commissioner maintains that the Court should find that any error was harmless. Although courts in this district generally remand when the record contains "no equivalence opinion whatsoever," they also acknowledge that "the lack of a medical opinion on equivalence can be deemed harmless error in some cases." *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861, at *6 (E.D. Mich. Sept. 26, 2014); *see also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655-58 (6th Cir. 2009) (applying harmless-error analysis in context of ALJ's step-three findings). Here, "the evidence does not demonstrate the possibility that [the plaintiff] could meet the criteria of a listed impairment." *Leveque v. Colvin*, 2015 WL 4601156, at *6 (E.D. Mich. July 31, 2015), adopted by 2015 WL 5612016 (E.D. Mich. Sept. 23, 2015). The Commissioner points out that the most recent consultative exam suggests there is little wrong with plaintiff beyond the limitations found in the ALJ's RFC assessment. (Tr. 357-59).

Next, the Commissioner asserts that substantial evidence supports the ALJ's RFC finding. This RFC finding properly accommodates for plaintiff's physical limitations as supported by the record, and may even overcompensate for his supportable limitations. First, the ALJ explained that on February 1, 2012, ALJ Hall-Keith issued a decision finding that plaintiff could perform light work, with no work around dangerous machinery. (Tr. 25, citing Tr. 70). The ALJ correctly noted that plaintiff's impairments and functioning had not significantly changed

since that decision and incorporated that determination concerning plaintiff's RFC. (Tr. 25); *see Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) ("When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent a change in circumstances."). Second, the ALJ added that the assessed RFC was consistent with the most recent consultative exam findings by Dr. E. Montasir, (Tr. 357-64), which the ALJ also afforded great weight. (Tr. 26). Third, the ALJ dutifully considered all the opinion evidence of record and the credibility of plaintiff's subjective complaints and provided satisfactory good reasons for the weight afforded to each. (Tr. 23-26).

Finally, the Commissioner contends that the ALJ's step-five determination is supported by substantial evidence. At step four, the ALJ found that plaintiff could not return to his past relevant work. (Tr. 27). The ALJ thus moved on to determine if there were other jobs existing in significant numbers in the national economy that plaintiff could perform. At the administrative hearing, the ALJ asked the vocational expert if there were any light jobs involving no climbing of ropes, ladders, or scaffolds; no work at unprotected heights; no work around moving machinery; and no driving that plaintiff could perform. (Tr. 52). The vocational expert testified that "With just those limitations, there would be some packaging jobs [with] representative DOT listing 753.687-038. There are 4,000 in

the region. There would be assembler, 706.684-022; 10,000 in the region. And there would be inspector, 559.687-074; 3,000 in the region." (Tr. 52). The vocational expert added that there would be another 5,000 jobs in the region plaintiff could perform at the sedentary level. (Tr. 52-53). This testimony, which the ALJ relied upon, serves as substantial evidence in support of the ALJ's step-five finding that there were other jobs existing in significant numbers in the national economy that plaintiff could perform. (Tr. 27); *see Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

D.    Plaintiff's Reply

In reply, plaintiff says that defendant's response is not right and he needs his benefits. Plaintiff asserts that he has been out of work for seven years and he cannot sit, stand or walk more than two hours. He still gets bad back pains and all jobs are early morning or late at night. He says that with his sleep disorder, he cannot work a full 40 hours.

III.  **DISCUSSION**

A.    Standard of Review

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further

analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

B.   Legal Analysis

Because plaintiff did not make any specific factual or legal objections to the ALJ's conclusions, and because plaintiff is proceeding *pro se*, the undersigned focuses on whether the ALJ's conclusions are supported by substantial evidence. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the application date. The ALJ ruled in favor of plaintiff at step one, and neither party contests this finding, therefore the court has no reason to believe that plaintiff did not satisfy this requirement.

At step two, the ALJ determined that claimant has the following severe impairments: obesity, obstructive sleep apnea, and a history of narcolepsy. (Tr. 21). At the same time, the ALJ ruled that plaintiff's back pain and gastro-esophageal reflux were non-severe. *Id*. At step two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or

mental impairment ... that meets the durational requirement in § 404.1509 ..., or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled.").  "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was "disabled" as defined by the Act...." *Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 929 (6th Cir. 2007); 20 C.F.R. 404.1513(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is ... [and] how your impairment(s) affects your functioning during the time you say that you are disabled.").  A "severe" impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).

The only aspect of the Step 2 analysis that was decided against plaintiff was the findings that his GERD and back pain were non-severe.  The Commissioner ably explains why this finding is supported by substantial evidence.  The Commissioner points out that the ALJ recognized that plaintiff testified to problems with acid reflux disease, but appropriately found that this was not a severe impairment given the lack of any documentation of this impairment in the

record, and the lack of any evidence establishing that this impairment significantly interfered with plaintiff's ability to perform basic work activities. (Tr. 23). And, while plaintiff also complained of back pain, the ALJ correctly noted that he never treated for this alleged impairment, and an October 28, 2014 medical assessment noted that plaintiff did not have pain. (Tr. 24, citing Tr. 372-73). Thus, the undersigned concludes that these findings are supported by substantial evidence.

At Step 3, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations and that claimant's representative acknowledged that he did not meet any listing. (Tr. 23). Under the theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or medically equals a Listed Impairment. *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012). When considering presumptive disability at step three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Id*. (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011)). An ALJ's failure to sufficiently articulate his step three findings is error. *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp.2d 846, 858-59 (E.D. Mich. 2012). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specific medical criteria."

*Sullivan v. Zebely*, 493 U.S. 521, 530 (1990) (emphasis in original).

There is no specific listing for sleep apnea or narcolepsy in 20 C .F.R., Part 404, Subpart P, Appendix 1. Rather, in the Listings for Respiratory Disorders, the Commissioner explains:

> P.    What are sleep-related breathing disorders and how do we evaluate them?
>
> Sleep-related breathing disorders (for example, sleep apnea) are characterized by transient episodes of interrupted breathing during sleep, which disrupt normal sleep patterns. Prolonged episodes can result in disorders such as hypoxemia (low blood oxygen) and pulmonary vasoconstriction (restricted blood flow in pulmonary blood vessels). Over time, these disorders may lead to chronic pulmonary hypertension or other complications.
>
> We evaluate the complications of sleep-related breathing disorders under the listings in the affected body system(s). For example, we evaluate chronic pulmonary hypertension due to any cause under 3.09; chronic heart failure under 4.02; and disturbances in mood, cognition, and behavior under 12.02 or another appropriate mental disorders listing. We will not purchase polysomnography (sleep study).

Nothing in plaintiff's medical records suggests that he suffers from hypoxemia, after he began using the CPAP therapy, or pulmonary vasoconstriction. And, there is nothing in the record suggesting plaintiff has chronic pulmonary hypertension, chronic heart failure, or disturbance in mood, cognition, or behavior. After a diligent review of the medical records, the undersigned finds no medical evidence

suggesting that plaintiff meets or equals these Listings. Moreover, the ALJ expressly considered plaintiff's obesity and how it affects his ability to function. (Tr. 22-23). Notably, the ALJ also concluded that there were no changes in plaintiff's impairments or functioning since the last ALJ decision from 2012. (Tr. 25). In the 2012 decision, the ALJ concluded that there was no evidence of any sleep disorder that would meet or equal Listing 3.11, 3.09, or 12.02. (Tr. 70).

As the Commissioner observes, although courts in this district generally remand when the record contains "no equivalence opinion whatsoever," they also acknowledge, "the lack of a medical opinion on equivalence can be deemed harmless error in some cases." *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861, at *6 (E.D. Mich. Sept. 26, 2014); *see also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655-58 (6th Cir. 2009) (applying harmless-error analysis in context of ALJ's step-3 findings); *Leveque v. Colvin*, 2015 WL 4601156, at *6 (E.D. Mich. July 31, 2015), adopted by 2015 WL 5612016 (Sept. 23, 2015) (Remand not required where "the evidence does not demonstrate the possibility that [Plaintiff] could meet the criteria of a listed impairment."). As explained in *Bukowski*, "'the harmless error inquiry turns on whether the ALJ would have reached the same conclusions,' at Step Three had there been a medical opinion on the combination of Bukowski's psychiatric and physical impairments." *Bukowski*, 2014 WL 4823861, at *5. While it is a rare case that such a determination can be

made without a medical opinion, given the dearth of objective medical evidence in this case suggesting that plaintiff's impairments separately or in combination could meet or equal a Listing, the undersigned finds that the failure to obtain a medical opinion on equivalence is in fact, harmless error.

Next, the undersigned concludes that the RFC finding is also supported by substantial evidence. The ALJ noted his obligation under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), Acquiescence Ruling 98-4(6), that an ALJ must adopt a finding of a claimant's RFC or other finding required under the applicable sequential evaluation process for determining disability, made in the final decision by an ALJ or Appeals Council on a prior disability claim, unless new and additional evidence or changed circumstances provide a basis for a different finding. Acknowledging this obligation, the ALJ determined that there were no changes in plaintiff's RFC. The undersigned agrees with the Commissioner's observation that the assessed RFC was consistent with the most recent consultative examination findings by Dr. E. Montasir, (Tr. 357-64), which the ALJ also afforded great weight. (Tr. 26). And, the ALJ thoroughly considered all the opinion evidence of record along with the credibility of plaintiff's subjective complaints and provided good reasons for the weight afforded to each. (Tr. 23-26). Notably, plaintiff's sleep apnea had actually improved from the time of the last decision, given that he was receiving CPAP therapy. As the ALJ

observed, Dr. Dani's letter dated March 4, 2014 does not suggest any work preclusive restrictions and is aimed at helping plaintiff obtain a CPAP or BiPAP. (Tr. 366). In an assessment dated October 28, 2014, wherein Dr. Mirza imposed severe restrictions on plaintiff, the ALJ properly noted that the opinion was internally inconsistent because (1) she remarked on plaintiff's inability to perform certain activities in the work place because of sleepiness while noting that he could travel places alone; and (2) despite noting plaintiff's drowsiness, she placed no environmental restrictions on him such as preclusions from working at unprotected heights or around dangerous machinery. (Tr. 26). Additionally, some of her opinions were consistent with light work, but the opinion that plaintiff could not stand more than two hours per day was not supported by any medical evidence in the record, and she noted that he had no pain complaints. *Id*.

Moreover, Dr. Mirzo also observed that plaintiff could not return to his prior work because it involved standing the majority of time at night, which undercuts any suggestion that his limitations were preclusive of all work. (Tr. 373). Dr. Mirzo also pointed to a polysomnography report from June 24, 2014 which led her to conclude that plaintiff could not perform any activities while sleepy. *Id*. However, Dr. Mirzo does not explain how this precludes all work activity and it does not account for any improvement in plaintiff's condition after obtaining a CPAP in August 2014, after the June 24, 2014 polysomnography

report, on which she relied to support all of her opinions. (Tr. 369, 373). Plaintiff simply offers no evidence suggesting that his condition worsened in any way. Thus, the undersigned concludes that the ALJ gave appropriate weight to this opinion and his conclusion that plaintiff's RFC remained the same is supported by substantial evidence.

The undersigned agrees with the Commissioner that the ALJ's step-five determination is supported by substantial evidence. At step four, the ALJ found that plaintiff could not return to his past relevant work. (Tr. 27). The ALJ thus moved on to determine if there were other jobs existing in significant numbers in the national economy that plaintiff could perform. At the administrative hearing, the ALJ asked the vocational expert if there were any light jobs involving no climbing of ropes, ladders, or scaffolds; no work at unprotected heights; no work around moving machinery; and no driving that plaintiff could perform. (Tr. 52). As the Commissioner explained above, the vocational expert testified that "With just those limitations, there would be some packaging jobs [with] representative DOT listing 753.687-038. There are 4,000 in the region. There would be assembler jobs, 706.684-022; 10,000 in the region. And there would be inspector jobs, 559.687-074; 3,000 in the region." (Tr. 52). The vocational expert added that there would be another 5,000 jobs in the region plaintiff could perform at the sedentary level. (Tr. 52-53). In the view of the undersigned, the Commissioner is

correct that this testimony serves as substantial evidence in support of the ALJ's step-five finding that there were other jobs existing in significant numbers in the national economy that plaintiff could perform. (Tr. 27).

## IV. RECOMMENDATIONS

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 25, 2017

s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 25, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant: James R. Rice, Jr., 18047 Oakfield, Detroit, MI 48235.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov